**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA SECURITIES AND EXCHANGE COMMISSION,<br><br>    Respondent.<br>_____/ | No. 3: 11-mc-80184 CRB (NJV)<br><br>ORDER DENYING MOTION TO QUASH SUBPOENA<br>(Doc. No. 1) |

**INTRODUCTION**

The district court has referred this motion to quash and all future discovery matters to this Court for determination. Doc. No. 9. Before the Court is John Doe's ("Movant") motion to quash an administrative subpoena served on third party Google, Inc. ("Google") by the United States Securities and Exchange Commission ("SEC"). The administrative subpoena seeks certain information of the type and in the manner authorized by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq*. ("ECPA"). The matter came on for hearing on October 4, 2011, the parties appearing telephonically. Having carefully considered the papers filed by and the arguments of the parties, the Court **denies** the motion to quash. The SEC sufficiently has demonstrated that the information sought is relevant and material to an ongoing investigation.

**BACKGROUND**

The administrative subpoena at issue seeks to discover the identity of the owner of the email address "aurorapartners@gmail.com," which the SEC has reason to believe may have been used to tout

1  stock for "Jammin Java Corp." as part of a "pump and dump" scheme.[1] "Pump and dump schemes
2  generally 'involve the touting of a company's stock (typically microcap companies) through false and
3  misleading statements to the marketplace. After pumping the stock, fraudsters make huge profits by
4  selling their cheap stock into the market.'" Doc. No. 11 (SEC Opp'n to Motion to Quash) at 2 (quoting
5  *United States v. Zolp*, 479 F.3d 715, 717 n.1 (9th Cir. 2007)). The SEC is investigating a rapid increase
6  in Jammin Java's price, which coincided with the wide dissemination of online newsletters touting its
7  stock. Doc. No. 11-2 (Declaration of Kevin De Jong in Opp'n to Motion to Quash ("De Jong Decl."))
8  ¶ 8. The SEC is investigating the online newsletters to determine whether they contained materially
9  false information about Jammin Java, and/or failed to disclose the disseminator's financial interest in
10 the company or compensation the company paid them. *Id.*, ¶ 9; *see also id.*, Ex. A (SEC May 13, 2011
11 Order Directing Private Investigation And Designating Officers To Take Testimony ("SEC Order")).
12 The SEC represents that it "has obtained information indicating that an individual using the email
13 address 'aurorapartners@gmail.com' may be involved in the touting activity at issue in the
14 investigation." *Id.*, ¶ 10; *see also* Doc. No. 11 at 6 (the SEC "identified Movant's email address as one
15 that potentially belongs to a touter in the 'pump and dump' scheme and issued an administrative
16 subpoena to determine the identity of the potential touter"). Pursuant to its investigative powers and the
17 ECPA, the SEC accordingly served an administrative subpoena on Google seeking the identity and
18 contact information of the owner of the email address "aurorapartners@gmail.com." *See* Doc. No. 11
19 at 1-2. Google gave the owner of the email address notice of the subpoena, the owner hired counsel,
20 and counsel moved to quash the subpoena. Doc. No. 2 (Declaration of John Doe) ¶¶ 5-6.

## DISCUSSION

**A. Legal Standard**

The Electronic Communications Privacy Act ("ECPA") requires "a provider of electronic communication service or remote computing device" to "disclose to a governmental entity the (A) name; (B) address; (C) local and long distance telephone connection records, or records of session times and durations; (D) length of service . . . and types of service utilized; (E) telephone or instrument number

---

[1] The owner(s) of two other email addresses similarly have moved to quash administrative subpoenas the SEC issued to Google in relation to its Jammin Java investigation, and the three cases have been related. *See* Doc. No. 15 (relating Case Nos. 11-mc-80208 CRB and 11-mc-80209 CRB to this one).

or other subscriber number or identity . . .; and (F) means and source of payment for such service, of a subscriber when the governmental entity uses and administrative subpoena authorized by Federal or State statute . . . ." 18 U.S.C. § 2703(c)(2) (a provider "shall disclose to a governmental entity"). When a governmental entity seeks information under 18 U.S.C. § 2703(c), the ECPA specifically provides the government is not required to provide notice to the customer whose records are being sought. 18 U.S.C. § 2703(c)(3).

There is no provision in the ECPA allowing a customer whose non-content records are being sought to prevent disclosure, although where the governmental entity is seeking the *contents* of customer communications, customers may challenge disclosure. 18 U.S.C. § 2704(b)(1)(A).

**B. Analysis**

1. The Parties' Positions.

Movant argues the subpoena should be quashed because disclosure of his[2] identity would violate his right to anonymous speech, which is protected by the First Amendment to the United States Constitution. Movant has used the email address "to speak anonymously on the Internet. Specifically, I use the email address to post my opinions on various political blogs, including about the policies of specific members of the U.S. Congress. I have made these political statements under the belief that my anonymity will be protected." Doc. No. 2, ¶ 3. Movant argues that the SEC was required to attempt to notify him and give him the opportunity to respond to the subpoena; that to prevail here, the SEC must allege a facially valid legal claim, produce *prima facie* evidence supporting the elements of that claim and demonstrate the speaker's identity is relevant to the legal claims; and then, that the court must balance the interests of the parties. Doc. No. 1 at 4-5. In support of this argument, Movant relies on cases involving discovery requests served by private parties in civil lawsuits. *See id.* (citing *In re Anonymous Online Speakers*, 2011 U.S. App. LEXIS 487 (9th Cir. 2011) (motion to compel deponent to reveal identity of certain anonymous online speakers alleged to have participated in "smear campaign" against class action defendant); *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 566 F. Supp. 2d 1205, 1212 (D. Nev. 2008) (tortious interference); *Highfields Capital Mgmt. LP v. Doe*, 385 F. Supp. 2d 969, 970-71 (N.D. Cal. 2005) (trademark and defamation)). None of these cases, however, addresses

---

[2] While Movant is proceeding anonymously, based on his selection of the pseudonym "John," the Court will assume that Movant is male.

the standard applicable to administrative subpoenas seeking non-content account information pursuant to section 2703(c) of the ECPA in connection with a securities fraud investigation.

The SEC directs the Court to *Brock v. Local 375, Plumbers Int'l Union of America*, 860 F.2d 346, 348 (9th Cir. 1998) for the uncontroversial proposition that administrative agencies may investigate on the mere suspicion the law is being violated. *Brock* sets out the three-part standard of review courts in the Ninth Circuit apply in an agency subpoena enforcement proceeding: (1) has Congress granted the agency the authority to investigate; (2) have procedural requirements been followed; and (3) is the information sought relevant and material to the investigation? 860 F.2d at 348-49. *Brock* recognizes that First Amendment protections may apply to information sought by an administrative subpoena and provides that where a party opposing disclosure makes a *prima facie* showing of arguable First Amendment infringement, the burden will shift to the government to show the information sought is rationally related to a compelling governmental interest and the subpoena is the "least restrictive means of obtaining the desired information." *Brock*, 860 F.2d at 350. Movant contends the *Brock* test does not apply here because a "more rigorous standard" applies to anonymous speech cases than to cases involving the right to free association at issue in *Brock*. Doc. No. 12 at 2.

2. The Appropriate Legal Standard For Compelling Disclosure Pursuant To An Administrative Subpoena.

Movant's argument relies exclusively on cases analyzing standards for disclosure in civil actions involving private parties embroiled in discovery disputes[3] -- not cases balancing the needs of a legitimate government investigation with the interest of a party wishing to remain anonymous. The government is not being "held to a lower standard when it uses its authority to strip a speaker's anonymity" (Doc. No. 12 at 2); rather, Congress recognizes the need for government agencies to investigate wrongdoing and accordingly has granted these agencies investigatory powers that are not available to civil parties. The ECPA, for example, allows government agencies like the SEC to issue

---

[3] Contrary to Movant's argument, *In re Anonymous Online Speakers v. U.S. District Court*, 2011 U.S. App. LEXIS 487 (9th Cir. Jan. 7, 2011) does not set out a standard applicable to criminal or governmental investigations. The Ninth Circuit there concluded that the lower court "appropriately considered the important value of anonymous speech balanced against a party's need for relevant discovery in a civil action." *Id*. at *17. Neither the district court nor the Ninth Circuit purported to apply the same standard outside of the civil action context.

4

administrative subpoenas requesting information from ISPs or to obtain court orders compelling disclosure of subscriber information. 18 U.S.C. § 2703(c).

The Court declines to impose a "more rigorous standard" than the standard articulated by *Brock* for two reasons:

First, contrary to Movant's assertion, courts have not imposed a more rigorous standard in anonymous speech cases of this nature. The SEC subpoena does not seek the content of any of Movant's communications but rather "addressing information" that will allow the SEC to identify Movant. Movant contends that he "has not disclosed his personal information in connection with the email address" (Doc. No. 1 at 3), but overlooks the fact that he voluntarily provided the information to Google when he signed up for his email account. The government thus seeks to compel disclosure of information Movant himself freely communicated to a third party. This type of disclosure is "routinely" ordered by courts. *In re § 2703(d) Order*, 2011 U.S. Dist. LEXIS 25322, ** 11-13 (E.D. Va. Mar. 11, 2011) (freedom of association does not shield persons from cooperating with legitimate government investigations, and routine compelled disclosure of non-content information that customer voluntarily provided to service provider does not form basis for First Amendment claim); *see also London v. Does 1-4*, 2008 U.S. App. LEXIS 11428, **4-5 (9th Cir. May 22, 2008) (affirming denial of motion to quash civil subpoena to internet service provider ("ISP") to reveal owner of email accounts because "exposure of some identifying data does not violate the First Amendment"). Other courts have weighed subscriber expectation of privacy when assessing First Amendment challenges to compelled disclosure of subpoenaed identifying information in civil cases, and concluded that Internet subscribers do not have a reasonable expectation of privacy in subscriber information they have already conveyed to their ISPs. *See, e.g., First Time Videos, LLC v. Does 1-500*, 2011 U.S. Dist. LEXIS 89044, **14-22 (N.D. Ill. Aug. 9, 2011) (analyzing motion to quash Rule 45 subpoena seeking discovery of addressing information of subscribers in copyright suit) (citing *Sony Music Entertainment, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564-65) (S.D.N.Y. 2004)).

Similarly, courts hearing motions to suppress evidence under the Fourth Amendment routinely reject the argument that subscribers have a privacy interest in their account information. *See, e.g., United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008); *United States v. Li*, 2008 U.S. Dist.

1 LEXIS 22283, *15 (N.D. Cal. Mar. 20, 2008) (ECPA draws important distinction between content and
2 non-content information; subscribers have no reasonable expectation of privacy in IP addressing
3 information); *Oregon v. Delp*, 178 P.3d 259, 264-65 (Ore. App. 2008) (no error to deny motion to
4 suppress evidence obtained as result of FBI subpoena to service provider seeking name and address of
5 suspect in criminal investigation); *Hawai'i v. Offerman*, 2008 Haw. App. LEXIS 390, **13-14 (Haw.
6 App. July 17, 2008) ("Federal courts, which have examined this issue in the context of information
7 obtained pursuant to the ECPA, have uniformly held that a subscriber does not have a reasonable
8 expectation of privacy in the subscriber information he or she provides to an internet service provider");
9 *United States v. Polizzi*, 549 F. Supp. 2d 308, 393-94 (E.D.N.Y. 2008) (subscriber lacks legitimate
10 privacy interest in account information that was transmitted to ISP). The Court finds no merit to
11 Movant's argument that a "more rigorous" test should apply to this case than to the freedom of
12 association at issue in *Brock*.

13 Second, Movant in a footnote argues that 18 U.S.C. § 2703 is unconstitutional to the extent it
14 allows the government to obtain information without giving notice to the subscriber (Doc. No. 12 at 2,
15 n.1), but does not cite any case reaching that conclusion. The Court has found none. *Cf. Warshak v.
16 United States*, 532 F.3d 521, 530-31 (6th Cir. 2008) (lawsuit claiming section 2703(d) unconstitutional
17 not ripe for review because whether email search violated subscriber's Fourth Amendment rights more
18 appropriately decided on case-by-case basis); *see also supra* (citing cases upholding disclosures made
19 pursuant to 18 U.S.C. § 2703). In fact, Movant's argument goes against the United States Supreme
20 Court's holding outside of the ECPA context that the SEC need not inform the target of its investigation
21 when it issues a third party subpoena. *See SEC v. Jerry T. O'Brian, Inc.*, 467 U.S. 735, 742-47 (1984).
22 Insofar as a government agency seeks only identifying information for a customer, as opposed to the
23 contents of a customer's communication[4], the agency need not provide the customer any notice that it
24 is seeking records pursuant to 18 U.S.C. § 2703. *See SAMS v. Yahoo!, Inc.*, 2011 U.S. Dist. LEXIS
25 53202, **20-21 (N.D. Cal. May 18, 2011) (noting that notice is not required where government seeks

---

[4] The ECPA draws a significant distinction between content information and non-content (or "addressing") information, and provides far greater protection to former than it does to the latter. In order to obtain content information, an agency must proceed either by warrant (which was obtained under applicable rules of criminal procedure), or by subpoena, with notice to the subscriber. *See* 18 U.S.C. § 2703(a) (warrant only method of obtaining content that has been in electronic storage for 180 days or less), (b) (warrant or subpoena can be used to obtain content in remote computing service).

addressing, non-content information from ISP). Unless the government agency successfully applies for an order sealing the subpoena, ISPs may provide their subscribers with notice, as Google did here.

The information sought by the SEC is explicitly permitted by the ECPA, and does not implicate First Amendment concerns.

### 3. The SEC Has Made The Required Showing.

The Court thus declines to apply the standard Movant advocates, and instead applies the *Brock* three-prong test, including the "relevant and material" standard. *Brock*, 860 F.2d at 349.

The SEC has established all three prongs of the *Brock* test:

(1) Congress granted the SEC the authority to investigate potential violations of securities laws. In issuing the SEC Order and proceeding to investigate the Jammin Java stock fluctuations, the SEC is fulfilling its Congressional mandate. *See* 15 U.S.C. §§ 78u(a), (b); *see also Jerry T. O'Brian*, 467 U.S. at 741-51.

(2) The SEC has followed the procedural requirements for serving an administrative subpoena. Movant originally challenged the SEC's failure to provide him advance notice of the subpoena, but appears to have abandoned this argument by the time of the hearing. As explained above, the procedural requirements of the administrative subpoena did not require the SEC to provide notice of the subpoena, and Movant's argument on this point (Doc. No. 1 at 2, 6) fails.

(3) The main point Movant challenges is that the SEC has not sufficiently established the relevance of his email address to the investigation. In opposition to the motion, the SEC represents it "has obtained information indicating that the email address 'aurorapartners@gmail.com' potentially belongs to a touter in the 'pump and dump' scheme." Doc. No. 11-2 (De Jong Decl.) ¶ 10; *see also* Doc. No. 11 at 6 ("the Staff identified Movant's email address as one that potentially belongs to a touter in the 'pump and dump' scheme and issued an administrative subpoena to determine the identity of the potential touter"). The Court notes that Kyle De Jong's Declaration was submitted under penalty of perjury. In addition, during the hearing, counsel for the SEC testified that the SEC had investigated web-sites where the touts had appeared and tracked the email addresses of individuals who had participated in setting up those web-sites. "Aurorapartners@gmail.com" was involved in setting up the web-sites and/or setting up email blasts that contained touts for Jammin Java.

There is no support for Movant's argument that the SEC cannot investigate the ownership of the "aurorapartners@gmail.com" address because the SEC Order does not identify that address or establish that securities laws have been violated. Doc. No. 1 at 6-7. The SEC has "broad authority" to investigate "possible violations" of federal securities laws. *Jerry T. O'Brian*, 467 U.S. at 741, 743, 745 (SEC investigatory powers are "expansive"); *Carrillo Huettel, LLP v. SEC*, 2011 WL 601369 (S.D. Cal. Feb. 11, 2011) (denying motion to quash subpoena for bank records of law firm where SEC had evidence that law firm represented individuals being investigated and also "may" have been involved in violation itself). For example, the SEC in conducting investigations "which, in the opinion of the Commission, are necessary and proper for the enforcement" of the Securities Act may "require the production of any books, papers, or other documents which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 77s(c). The Commission may "make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate" any SEC rules or regulations, and may demand to inspect any documents "the Commission deems relevant or material to the inquiry." 15 U.S.C. §§ 78u(a), (b). The SEC thus has wide latitude to investigate whether any "persons or entities" potentially have violated the Securities Act of 1933 or the Securities Exchange Act of 1934. *See* Doc. No. 11-2 (De Jong Decl.) ¶¶ 2-4.

Nor does the SEC need to offer admissible evidence that the owner of the email address "aurorapartners@gmail.com" is related to its investigation (Doc. No. 12 at 3-5) in order to acquire the requested information. *See Jerry T. O'Brian*, 467 U.S. at 745 (noting that the SEC "often undertakes investigations into suspicious securities transactions without any knowledge of which of the parties involved may have violated the law," for example when trading activity suggests insider information may have been used but the SEC "may have no idea which (if any) of the thousands of purchasers had improper access to insider information"); *see also United States v. Morton Salt*, 338 U.S. 632, 642-43 (1950) (a federal agency "can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not" and is not precluded from engaging in "fishing expeditions" in the same manner litigants in courts are). The SEC only need show that the information it seeks is relevant to its investigation of a potential violation, and when assessing the validity of an agency subpoena "the notion of relevancy is a broad one." *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir.

1982). An administrative subpoena will survive a relevancy challenge as long as the information requested "touches a matter under investigation." *Elrod*, 674 F.2d at 613 (internal quotation omitted). The identity of a potential touter of the Jammin Java stock "touches" the SEC's Jammin Java investigation and thus is relevant.

Movant contends he has used the email address at issue to participate in anonymous political speech. Movant has a First Amendment right to participate in anonymous speech, political or otherwise, in online fora. However, at least in the context of valid government investigations, courts repeatedly have concluded that identifying information is not subject to First Amendment (or Fourth Amendment) protection. *See supra* at pp. 5-6. Movant thus fails to establish a *prima facie* showing of First Amendment infringement under *Brock*, and the burden does not shift to the SEC to establish a compelling interest exists. *Brock*, 860 F.2d at 350.

## CONCLUSION

Movant has not established that his addressing information is protected under the First Amendment, and the SEC sufficiently has established that the ownership of the email address "aurorapartners@gmail.com" is relevant to the Jammin Java investigation. Accordingly, the motion to quash the subpoena directed at Google requesting this information is denied.

Dated: October 4, 2011

NANDOR J. VADAS
United States Magistrate Judge